The next case on the calendar, Simon. Good morning, Your Honors. My name is Ugo Uzo, and I represent Ms. Simon. In this case, we are asking the Court to review the decision of the District Court that granted qualified immunity to the defendants. The defendants in this case arrested Ms. Simon at approximately ten in the morning, based on officially valid arrest warrant. Then they learned almost immediately at 10.30 a.m. that she was the wrong person, and that they were actually looking for her daughter. Instead of releasing her immediately, they unreasonably prolonged her arrest and detention for another eighteen hours. What is the evidence that the defendants learned at 10.30 that they had the wrong person? Based on their own testimony, there were two detective DA investigators that carried out the arrest. Both of them testified that Ms. Simon informed them at approximately 10.30 a.m. that they were looking for her daughter. The DA himself testified that almost immediately he learned that based on the questions he asked Ms. Simon, he determined that Ms. Simon was the wrong person. The District Court itself also concluded, based on the totality of the evidence before it, that the defendants knew at approximately 10.30 a.m. that Ms. Simon was the wrong person. One of the arguments made is that, though that's true, it's inconsistent with your client's testimony as to the basic timeline. They argue that even in the summary judgment context, you can't pick and choose and cut and paste together a narrative, your client's testimony when it's helpful, ignore your client's testimony when it's harmful, because no reasonable jury could come to that conclusion. I'm not sure I have a clear sense of your response to that argument. Our response is that, in this case, you're looking at the entire record, and that's based on decisions from this court. You review the entire record and, in light, most favorable to the plaintiff. First of all, the plaintiff herself doesn't have that much experience with the courthouse. It's very likely that she . . . At the time when she testified, it was already a couple of years after the arrest. It's very likely that maybe she mixed up some of the information. More importantly, in this case, the district court reviewed the entire record and determined that, based on the entire record and reviewing it in light most favorable to the plaintiff, that the defendants themselves learned as early as 10.30 a.m. that they had the wrong person. Even at that, Ms. Simon herself was very clear that the moment when she was arrested by the defendants and placed in the vehicle, they started questioning her about the stolen vehicle, about facts underlying the case, and that she repeatedly told them, I don't know. I don't have any information. I don't know what you're talking about. You probably had the wrong person. The record is very clear that they knew . . . They didn't have to believe her, right? They didn't have to believe her, absolutely, but because they themselves actually admitted, themselves conceded that they knew as early as 10.30 that she was the wrong person. Even at that, they were required by the warrant to take her before a judge, for the judge to make a determination. Your argument is it's at a specific time, 10 a.m., for a material witness hearing, right? Is that . . . That is correct. She did not have that hearing at 10 a.m. That is correct, Your Honor. She was kept in a small room for how many hours? By her testimony, she was held on the first day for approximately 10 hours, and on the second day, the warrant was very clear, take her before a judge so the judge can make this determination whether she's the right person or not. The defendants themselves, their testimony was that we didn't do that because we knew right away she was the wrong person. Instead of releasing her, they held her, and they held her for 18 hours. At the time of the hearing, it was very clearly established that you cannot rely on officially valid arrest to detain the wrong person. There were cases that we cited, the Ninth Circuit case, Lee against Gregory. There was the D.C. Circuit case, United States against Glover, and there was also, I believe, the Fifth Circuit case, Brown, that we cited. You cannot rely on officially valid arrest warrant to detain a witness, and that's what they did in this case. To the extent they're relying on the warrant, which I don't really believe that they are, according to their testimony, we found out that she was . . . that she was the wrong person and let her go. The police themselves contracted that testimony. Their testimony was we found out that she was the wrong person, but then the D.E.A. turned around and directed us to transport her to his office, and we did that, and she was there for at least about an hour before she . . . the D.E.A. instructed us to take her home. Even for the first day, after they knew that she was the wrong person, they still went back the second day, and they went to her home. I want to ask you about the second day. Let's say we would agree with you that on August 4th, 2012, the Supreme Court said in a case involving the denial of qualified immunity that you need to, and I'm quoting, identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. Can you draw our attention to any cases that existed in August . . . by August 2008, where the court determined that somebody was seized in similar circumstances? Your Honor, not exactly with respect to material witness warrant in this case, but with respect to criminal arrest warrants, as well as harsh warrants, there are cases, and the Supreme Court is also clear that it doesn't have to be on all fours. Even the recent Supreme Court case in Westby, the Supreme Court was very clear. When it's obvious, as the circumstances of Ms. Simon's arrest was obvious in this case, when it's in an obvious case, you don't have to . . . the officers are required to act upon what is obvious. In this case, it was obvious that Ms. Simon was not the person they were looking for. We cited a number of second circuit cases, as well, that you require to release an arrestee immediately upon finding out . . . immediately after your arrest. In this case, we argue that that's the Russo case, the Russo against Syria Bridgeport, as well as, I believe, Geiser against Repicci. The moment it became unreasonable for the defendants in this case to hold on to Ms. Simon, they were required by the Fourth Amendment to release her. Now, if we were to take the view that Lange-Boerdi didn't subjectively know that Ms. Simon was the wrong person until the day of August 11th, wouldn't that take the August 11th detention outside of Russo? You know, but then again, you have to look at the fact that, well before this court, I believe in 2013, and at that point in time, the court actually found that the defendants themselves were trying to evade the requirements of the warrant, which was produce Ms. Simon before the criminal court so the criminal court itself can make a determination whether this individual actually has information as to what you were looking for, but they didn't do that. They didn't take her before the criminal court to make that determination. It wasn't up to Lange-Boerdi to make that determination whether or not she had the information. He was required by the warrant to produce Ms. Simon before the criminal court so the criminal court itself can make that determination, but Lange-Boerdi put it up on himself to hold her, and he held her not only the first day, but also the second day. So we submit, Your Honor, that in that case where he himself put it up on himself, there's also the Schneider case, the third circuit case in Schneider. Similar issues were discussed there. The individual there was required to notify the judge about whether the court needed to continue the detention of the witness in that case. The DA didn't do that, and the test circuit found that in that case, because the DA failed to notify of whether or not to release the individual and decided up on herself to hold this individual, that it should have been obvious to the DA that she didn't have any grounds to hold this individual, so . . . Judge Fischer. Mr. Uzo, just embedded in that answer is the assumption that she's . . . I think you used the phrase being held, held. I mean, essentially that she is seized, and to take Judge Katzmann's question, on the second day, and so through the lens of qualified immunity, don't you have to establish that under the circumstances of that second day, no reasonable officer would deem her anything but seized, and then seized from the perspective of what she reasonably assumed? I'm not sure you've addressed that. That is correct. That's also the second point, Your Honor. The second day, I was trying to address the first day, but the second day as well, they also held her. They went back, not just that they held her, they went back to her home and they took her. At that point in time, the warrant only provided for her arrest on the first day, the 11th, but not only did they arrest her on the 11th, they also re-arrested her on the 12th, and there was no basis for either the 11th arrest or the 12th arrest, Your Honor. Unless the court, as I consider my time is up. I have a question where I seek your help and understanding. How do we reconcile your argument that we should analyze the detention through the prism of reasonableness with a decision of this court, U.S. v. Awadala, which seemed to indicate that the appropriate standard was a probable cause? Your Honor, we cited Awadala as well. Awadala was also open to reasonableness in reviewing the material witness warrant. We cited Awadala, and there was also a decision of this court before Awadala, I believe Galeno, that also used reasonableness in reviewing material witness warrant.  Thank you, Your Honor. Thank you, Your Honor. May it please the court, Cody Wofsy, ACLU for Amici. Your Honors, I'd like to sort of pick up right where the conversation left off. I think that this entire question about probable cause versus reasonableness is beside the point in this case, because the officers, once they knew that Ms. Simon was the wrong person, they had no basis to be holding her on either prong of the detention of a material witness. That's first of all that the person has material information about the case itself, and secondly and critically, that she would not, in fact, come to court if served with a subpoena. So there are really two— And that's the New York law for the issuance of a material witness warrant. And Your Honor, Awadala, which is actually a federal material witness case, laid out that as the probable cause standard that was required. And so it's the same requirements under New York law. And there's really two clearly established legal principles that the defendants violated in this case. First of all, they violated the clear terms of the warrant itself, the central terms. And that's a per se constitutional violation. And they did that by not putting her up in front of the judge at 10 a.m., as Judge Katzmann was discussing. Secondly, and apart from the terms of the warrant, once they knew she was the wrong person, it was clearly established they could not detain and interrogate her without probable cause. That's been clear since the Dunaway case from the Supreme Court. If we were to agree with you on that second point, that sort of second framing or violation, we don't need to—would we need to address the first point? That's—no, Your Honor, you wouldn't. And each of those violations is sufficient independently to reverse the district court. And on the first violation, you're saying that failure to strictly comply with the timeframe set out in the warrant is a clearly established—how would you frame the right there? Your Honor, the right is the right not to be held in violation of the clear terms of the warrant itself. And the Miller case speaks to this directly. This is a denial of qualified immunity out of the First Circuit. And it was a similar warrant said, take this person immediately to court. And instead, they're brought to jail over the course of the weekend. And the court says, it's just axiomatic. You cannot detain somebody on an arrest warrant in violation of the terms of that very warrant. And so, Your Honor, we think that's a clear principle. There's a number of other cases we cite at page 14. But you're right. Even if you don't want to say that the violation of the warrant by itself is a violation, once they knew she was the wrong person, they can no longer be relying on this arrest warrant to supply the basis to continue to detain her. They know she's somebody else. Now, the district court— So, are you saying that, at bottom, that the violation of the terms of the warrant is enough in terms of a rationale for this case, and we don't have to get into the constitutional arguments? There's a written—there's a document that says these things are supposed to be done. They weren't done. Is that the end of the case? Do we even have to get into the constitutional issues? Your Honor, that can be the end of the case, absolutely. That is a constitutional violation. And then there's the separate constitutional violation, apart from the warrant, that is that once they knew she was the wrong person, then they're just—it's an investigatory detention and interrogation. And the Fifth Circuit— Is probable cause even relevant, once they know she has—she's the wrong person? Does it matter whether—let's assume they have probable cause to think that she might have some information. Could they detain her at that point? Your Honor, as a Fourth Amendment matter, we don't think that officers can be arresting a court order without a warrant. Now, whether that's true or not doesn't actually matter in this case, because they lacked probable cause. And that's clear from the record. Your Honor, the district court suggested that maybe there was probable cause that the mother as the mother, Ms. Simon, was— And probable cause to think that she might have material information. Not that—right? It's—excuse me, Your Honor. Sorry. Probable cause for what? Right. And that's the Awadallah case out of this court. It's two things. Probable cause that she would have material information, material to the underlying criminal case. And critically, probable cause that she would not show up to court if issued a subpoena. And that's really crucial, Your Honor. We're talking about arresting and holding and jailing innocent witnesses. That's an extraordinary thing. And that's exactly why the New York statute and this entire idea of material witnesses are protective of the witness. On that point, on that sort of the first frame that you've set up, Awadallah seems to suggest that as long as it's within a few days, right? There's language that says, had a hearing within a few days, which is the 48-hour time frame maybe, but certainly that's more than 18 hours. Your Honor, we don't understand the appellant. The appellant is not arguing here that the short time period that she was held on the warrant before they realized she was the wrong person was itself a constitutional violation. Again, there's two things. One is, she was held on this warrant that specifically said she had to be brought to court for this 10 a.m. hearing. And then they don't do that. And Miller is the case that you cite for that sort of, that what it says on the warrant sort of gets constitutionalized? If you, if you, what's the, what, what laws do you rely on for that? Yes, Your Honor. Miller is a very good example of applying this principle in the qualified immunity context, but we cite a number of other cases, including the Horton case out of the Supreme Court, where the court says the violation of a terms of a warrant without more is a constitutional violation. But separately, on the, on the other constitutional violation, getting back to your question about the time period, once they knew she was the wrong person, it's not that they could hold her for 18 hours, 24 hours. They couldn't hold her for 10 minutes. I see that point. They want to shift, they want to shift the frame back and say, you should look, the question is, when you have a validly issued material witness warrant, is it a, is it a clearly established constitutional violation to have held somebody without bringing them before a judge for 18 hours? And, and there, it's hard, I mean, framed that way, it's hard to know what, what cases we look to to say it's clearly established. Without the move that you're making, I think, to sort of look at the face of the warrant and say, well, that tells us precisely when she had to be brought before a judge. I agree completely, Your Honor. The, the city is really trying to have it both ways here. They're relying on the warrant. And yet, if, if the officers really thought that they were executing this warrant and holding the person who they were actually looking for, the daughter, then why aren't they putting her up in front of the judge as directed by the warrant for the 10 a.m. hearing? Remember, they're all sitting outside the courtroom. That's exactly why they're there. They all understood that's precisely what this warrant required, and yet they don't put her up. And, and the district court's rationale here seemed to be that actually there was some kind of probable cause, but there's no basis in the record to support that. Certainly, there's no basis to support the, the prong that she wouldn't come to court if she were subpoenaed. District court doesn't point to anything to support that, and there is nothing to support that. And there's also no probable cause to think that she actually was a witness in the underlying criminal case. Again, the district court sort of offers speculation. That's not probable cause. So if, if, if, uh, if what was done on August 11th, uh, was improper, then that, in your opinion, that if it could be determined that, uh, they had the wrong person and the, um, terms of the warrant were not satisfied, that is, uh, uh, reporting for a hearing at, at 10 a.m., uh, then is anything else that comes thereafter, after it was determined that Aldis was suspect, uh, is automatically tainted? In other words, how do you look at August 12th? Do you say, since August 11th, everything was, uh, improper in, in, in your view, therefore, with respect to August 12th, it's automatically improper? Or does it have to be analyzed separately? Your Honor, I, I don't think it needs to be analyzed separately. She was still in detention and they still had... Doesn't that have to be analyzed separately? Well, the, the city does make this argument that she consented on the second day. It's important to note that the district court assumed she did not consent on the second day and that's because her clear testimony was that she didn't, that the officers told her, you have to come with us. But as long as she was in detention, yes, it's, it's the same analysis. In fact, it's worse. At that point, what is their basis for holding her? A material witness warrant that they knew the day before was for the wrong person and that directed her to be brought to a hearing the day before or a even longer interrogation, uh, without any probable cause. You know, the Fifth Circuit in the Lincoln case said Dunaway's clearly established law here that you cannot detain and interrogate a, a witness just because you want to hear what they have to say. That was a five hour interrogation. Here we're going well past that period into the second day. So if anything, I think it just makes it worse that she was held on the second day. Thank you. There are no further questions. Thank you. Sorry. May it please the court. Alina Jerker on behalf of the district attorney office defendant's attorneys. The ACLU's presentation makes quite clear there's no clearly established law in 2008 about the constitutional contours of a material witness warrant. So do I take it, uh, just at the outset, just so that I'm clear that, um, you're conceding, um, on Simon's version of the facts that defendants violated the fourth amendment and your argument really goes to, uh, whether, uh, it was clearly established. Is that correct? No, I believe it's hard for me to know what is Simon's version of the facts, but if we say that she says she's detained and picked up at some point or another, let's ignore what time it happens. She has a conversation with the district attorney's office and she can look into their mind and know what they believe. We're not our, I mean, we're arguing is about qualified immunity and, and right. That's my point. I mean, so, I mean, as to the first prong of qualified immunity, um, uh, whether the defendants, uh, violated the fourth amendment, you're not taking a position, are you? Because it seems like just reading your brief and I may be misunderstanding. I hope you will correct me. Um, feel free to correct me. Um, it seems that you're focusing on, on the second prong. I understand. I think that there is no suggestion that if we were to accept it's true that the, that the guise of the material witness warrant no longer captures the detention, that a custodial interrogation and that there's no consent, that then a custodial interrogation, I mean, on basic first principles, then of course the custodial interrogation with no probable cause and no material witness warrant. That's not this case. Um, and I'd submit maybe that no reasonable juror could find even on these facts that that's that case. But more importantly, what we're arguing is on the qualified immunity prong that not every reasonable officer standing in the shoes of our district attorney would believe based on the facts that were presented that they had the wrong person. And so the material witness warrant, it was duly issued by analogy, the 2008 analogy, the best they have is probable cause. Sorry, you're, that's a factual argument. You're saying no reasonable officer would have believed that they had the wrong person. What I'm saying is a qualified immunity argument. So what a, what Wren says, you just said that, I'm sorry, I thought you just said that no reasonable officer could have believed that they had the wrong person. Is that what you said? Or am I missing? No, not every reasonable officer would have been compelled to believe that they had the wrong person. And I understand your concern is that this is summary judgment, but on qualified immunity, on summary judgment, what we do is we take all the facts and inferences in the favor, in the light most favorable to Ms. Simon, but nonetheless, we stand in the shoes of the officer with the objective facts, not the subjective beliefs that they've come to. So our DA . . . If, if we conclude that there's a factual question and that there is sufficient evidence to support her assertion that the defendants knew roughly 1030 in the morning that they had the wrong person, assume those facts, then what? Nonetheless, the officers are entitled to qualified immunity just because a, just because one officer in the panoply of choices could have concluded, as you posit, that she was the wrong, she was not the person that the warrant, she's the person in the warrant, but the warrant was gotten for the wrong person. Another reasonable officer could have just as reasonably concluded based on these facts, she lives across the street from the officer, the officer who identifies a person who lives across the street by her name, Alexandra Alexander, there's a hotel, there's a . . . All of these facts taken together . . . But does the knowledge doctrine apply here? Does it apply here? Well, I mean, it doesn't, it doesn't. I mean, the point is that there is, by analogy to probable cause, there is a . . . So you're saying even assuming one officer knew that they had the wrong person, other officers might have reasonably believed otherwise? What I'm saying is that for qualified immunity, the question isn't what these individual defendants subjectively believed in their minds. The question is whether a reasonable officer standing in their shoes with the objective facts before them, the fact that a material witness is someone who will often say, I'm not who you want, I don't want to cooperate with you, because that's the purpose of the warrant. The fact that this . . . Let's just go back. If you assume, let's assume an objective, reasonable officer learned by 10.30 in the morning that they had the wrong person named in the warrant. What does it mean to learn? I'm sorry? I guess . . . I'm sorry, Your Honor. No. Just . . . they know it. Don't fight the hypo. They know it. I think the qualified immunity question is not what's in their mind. I think that in Al Kidd, it's quite clear they said the Fourth Amendment regulates conduct rather than thoughts. The point is that if Mr. Ashcroft thought that the only reason he wanted Al Kidd was because he's a terrorist, but he doesn't have probable cause to detain him, that's an unconstitutional thought, but we don't regulate that. What we regulate is there was materiality and impracticability. That means on its face, a reasonable person standing in Mr. Ashcroft's shoes would have thought, could have thought, that is, within the range of options, could have thought . . . If the officers knew they had the wrong person named in the warrant, could they, under any circumstance, keep that individual in detention and interrogate that person? Are you asking for the purposes of qualified immunity or as a clearly established law in 2008? Because I think that's the . . . the difference, I think, is no. If an officer knows, and I guess I take that . . . if an officer knows we have DNA evidence and a confession from someone else, an alibi, the probable cause is vitiated. That's the analogy to So that every objectively reasonable official would know so. Our Russo case, a police officer, once a police officer learns that the warrant was obtained by mistake, the person must be released. Learned, absolutely right. Why doesn't that apply here? Once they learn that, assuming they did, that they had the wrong person, why were they not obliged to release her right then and there? So, what I think, as a constitutional matter, as a matter of first principles, had the officers actually learned that they had the wrong person by some evidence, some fact . . . You will not accept my factual scenario. It's . . . was obtained by mistake. Is there not an obligation to release that person immediately under our decision in Russo? There absolutely is. And what I'm suggesting is that in this case, and in cases like it, when an officer subjectively believes they've learned something, that doesn't mean that that officer is not entitled to qualified immunity. If another reasonable officer standing in those shoes, knowing what he knows, could conclude otherwise, because this is a conclusion that these detectives testified to. They reached a conclusion. She said, I'm not the right person, and they chose to believe her. But that's what's in their mind. The objective facts are, they have a material witness warrant. No one disputes that the facts that, although albeit mistaken, support the warrant. The warrant is valid on its face. They expect someone who's going to be oppositional because it's a material witness warrant. And then on top of that, the nature of this investigation . . . hearing, 10 o'clock, and it's clear from the warrant that the court has not decided that she is a material witness. The hearing is to decide whether she is a material witness, and she's not brought to court. I understand. I think that states, if anything, a complaint about adherence to state procedural law, but it's not a constitutional right. Why is that? I mean, the First Circuit, why shouldn't we follow the First Circuit in Miller v. Kennebunk County, where it says, it is self-evident that a seizure conducted pursuant to an arrest warrant must conform to the terms of that warrant? It suggests that instead, this court should follow its own precedent in Watson v. City of New York, 1996 case, in which we discuss . . . you discuss the question of whether or not a requirement that someone be arraigned within 24 hours under state law can be constitutionalized when, as we know, the outer contours on the constitutional claim are 48 hours. And this court says, look, absolutely not. We can't constitutionalize state law claims. And think analytically what that would mean. That would mean that a state creates a procedural floor to protect a substantive right, and then you would constitutionalize that floor, creating a new substantive right, and then the state would create a new procedural rule to protect that substantive right in a feedback loop. And that's why the question on qualified immunity is not . . . Shouldn't words have meaning? Words do have meaning. That is to say that, put yourself in the position of somebody who is the object of the material arrest warrant, says that at 10 a.m. you will appear before a court. Now, shouldn't our administration of justice adhere to some sensibility that 10 a.m. means 10 a.m.? I think . . . Maybe it drifts to 11, but it can't be a day later or two days later. It can't be that you're kept in a small room, can it? No, it certainly can't be two or three days later. It can't be that you're kept in a small room. But that said, what the Fourth Amendment demands is reasonableness. And the closest analogy that our officers had in 2008 was probably McLaughlin in a 48-hour detention. This is less than half of that. It was considered reasonable when someone didn't even have a warrant. So there wasn't even an establishment of probable cause. That's for the initial  analogy. A warrant is, in essence, a court order. And it says, bring the person forthwith. And that is a state procedural right. The forthwith, what does that mean? It is a state procedural right. And a right . . . Forthwith means now, right away. Judge Friendly said that forthwith means 10 days. I think the point is that forthwith is not . . . Not in the context of holding someone in custody. Well, that is a state . . . that is an argument about what the state law requires. The New York Court of Appeals . . . Is there a due process right to have an arrest warrant complied with? No, Your Honor. No. I think that there is a due process right to have. And the cases that my adversaries have cited, the cases that say, if a search warrant says you can search in a box for a gun, you can't look in a tiny little pillbox. That's clear. But if a warrant says, in 2008, you have to bring a material witness warrant because we have materiality and impracticability. You have to bring the person to the courthouse. The guidance there, at best, is what's reasonable under the circumstances. And in the vacuum of law that existed in 2008, McLaughlin was likely the best analogy. I mean, even in Al-Kid in 2010, two years later, eight judges on the Ninth Circuit dissented from rehearing en banc. Judge Bea dissented. The Supreme Court couldn't reach consensus on what the right constitutional rubric was with Kennedy saying probable cause shouldn't even be it. It should be reasonableness. And under that circumstance, to expect an officer who believes they have the right person, and a reasonable officer in their shoes might have continued to believe that throughout this detention, to know exactly what they are meant to do, is to expect more. It's to say that they have and that doesn't put the right beyond a doubt. And that's what needs to happen here. So that I'm clear as to what you've just said, are you suggesting that the standard is reasonableness and not probable cause? You know, I don't think it's actually necessarily clearly established even now. I think that Justice Kennedy's... What do you think it should be? On material witness warrants? What do you think it is? Yeah. I think it's probably reasonableness. I think Kennedy's concurrence is pretty persuasive in that the idea that probable cause generally now, with the benefit of that decision, probable cause means probable cause to believe something happened. Whereas materiality and practicability are more questions about... I mean, they require a weighing of something more. But in 2008, the highest precedent on that point was probably the Bacon case from the Ninth Circuit. And that case said that straight up, it's probable cause to believe materiality and impracticability. And with that, it imported these concepts like the presumption of probable cause that arises from a warrant, like the idea that you vitiate a warrant. It gave officers some guidance in the sense that they already had a case, a set of, a body of laws to look to. And the reason they're a poor fit and the frustration that 48 hours might apply is, I think, tethered to the fact that that probable cause standard might not be, nowadays, make as much sense. But that said, the Supreme Court still hasn't decided the issue. And I don't think any consensus has emerged among the circuits about whether it should be one or the other. Would you agree that a prospective material witness has, at minimum, the same rights as a criminal suspect has? Of course. Okay. No, of course. But the problem is that, in this case, what we have is, standing in the shoes of these officers, whether no reasonable official could have believed in 2008 that they had the wrong, that they still had the right person, given all of these facts, I think that makes that person probably in the same shoes as a criminal arrestee, probably the stronger ones. I want to understand that. This is back to the earlier part of the argument. Just this move that you're making. You're basically saying, it matters not what is in this record as to what these officers thought. So if every one of these officers testified, without contradiction, that we detained someone for questioning because they're African American, you would say qualified immunity could apply because some reasonable officer might look at a different set of facts here and conclude, not unreasonably, that there was reasonable suspicion to detain them. Qualified immunity applies even though it's uncontradicted in the record that there's an inappropriate basis for detention. I understand. Yes, that's what Wren says. I mean, Wren clearly says, and in fact, if you read Justice Ginsburg's concurrence in Westby recently, it says exactly that. Look, it's not clear to her that that is still how the law ought to be, but it is how the law is, which probably causes a completely objective inquiry. In Wren, they have a traffic stop that's entirely . . . the plaintiff claims it's racially motivated. It's completely objective, but based on the totality of the circumstance, you can't just substitute in . . . Well, the totality, that's exactly what it is, though. That's what Devon Peck is. If you have an officer with a bad motive, an unlawful, unconstitutional motive, but an objectively reasonable officer, based on the facts here, could find that there is probable cause for an arrest or reasonable suspicion for a stop, then there is qualified immunity, there is probable cause, and that's because the courts have decided that this is a better world to live in than the world in which every single time we decide our question based on what's inside the officer's head. Posit the opposite, where an officer believes wholeheartedly that they have arrested the right person. They get day in evidence and an alibi and a confession from somebody else, and no reasonable person could possibly believe they have the right person, but the officer nonetheless believes it. Would we believe that that was probable cause and allow that arrest? No, because the question has to be, would an objectively reasonable officer, knowing what this officer knows, facts, not beliefs, coming to it without any additional prejudices, what an objective person would say. It makes it easier for the courts, it makes it easier for officers, but yeah, it does come up with this strange position where regardless of what the person's individual motivation is, the question is still objectiveness. That, too, is something that every time qualified immunity is decided on a motion to dismiss, that's exactly what's happening. We assume, for the sake of argument, that everything in the complaint is true, including the poor motives that the officer might have, and we nonetheless decide whether a reasonable officer on these facts, like actual facts, not beliefs, totality of them could have come to that. So, yes, answer to the question. Does that answer it completely? It's an answer. I urge you to read the concurrence in Westby, which I think speaks to the same sentiment about that's where the law stands now. If the court has no further questions? Thank you. Thank you. Mr. Muzo, you'll have three minutes. Thank you, Your Honor. I'll just make one point, and if it's okay with the court, I will cede the balance of my minutes to the amnesia. The only point that I want to point out, Your Honor, is that here we're actually dealing with district attorney who is charged with knowing the law. The idea that there would be a district attorney out there who would question . . . at the time my client was about forty-six year old, question a forty-six year old woman as to what she knew about people going to club and clubbing and all of that issue that twenty year old normally do. And having a twenty year old as a best friend, I'm not sure that there is any reasonable human being who would believe that a twenty year old would believe that a forty-six year old woman would be living the life of a twenty year old woman and would be engaged in the same kind of activities . . . It does, but Your Honor, that would be a rare situation. But if it's okay, unless the court has any questions for me, I'd like to cede my time to amnesia. Thank you, Your Honor. Three quick points. First of all, on this question about the standard being probable cause or reasonableness, this is beside the point in this case because the officer's conduct could survive neither a probable cause analysis nor a reasonableness analysis. The law at the time was that probable cause was the standard. That's the Almodovar case, but again, it doesn't matter in this case. Secondly, on this question of the terms of the warrant, counsel cited the Watson case. That is nothing to do with that question. That was a warrantless arrest and it's just an alleged violation of a State procedural right. This is a violation of the clear terms of the warrant itself. It's a completely different issue and I think it's telling that counsel isn't able to cite a single case where the court, any court says otherwise. Thirdly, my understanding now is that counsel is conceding that on the version of facts found by the district court supported by this record on the city's summary judgment motion, that qualified immunity should have been denied. And the only argument now is about, is this idea that maybe even though these three officers subjectively understood that it was the wrong person, that some other officer would think differently. That is not the law. That's not what Wren says. That's not what Alkid says. Those cases are about motivations, not about subjective understandings. That is a historical fact and I direct the court to the Lee case out of the Ninth Circuit. It looks at this exact question and rejects this argument on the basis that once the officer knows, that is the end of the analysis and that was similarly a warrant issued for the wrong person. Your Honor, if there are no further questions. Thank you. Thank you all for your arguments. The court will reserve decision.